UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
UNITED STATES OF AMERICA     )
                                        )          CRIM. NO. 21-CR-10354-WGY
v.                                      )
                                        )
DARONDE BETHEA                 )
_____)

## DARONDE BETHEA'S SENTENCING MEMORANDUM

Daronde Bethea, a 32 year old father of young twins, is before this Court for sentencing.  He respectfully submits this memorandum to aid the court in arriving at a reasonable sentence that is sufficient and not greater than necessary to promote the goals of the Sentencing Reform Act. 18 U.S.C. § 3553(a).

I.     SENTENCING GUIDELINES

The PSR correctly states that Mr. Bethea's Total Offense Level ("TOL") is 34.  However, the final PSR places Mr. Bethea in Criminal History Category V,[1] resulting in a Guidelines Sentencing Range (GSR) of 235-293 months.  Mr. Bethea submits that he should be in CHC IV, for which the corresponding GSR is 210-262 months.

---

[1] The first draft of the PSR placed Mr. Bethea in CHC IV, but it failed to include a conviction (which now appears in ¶ 74) for which two points are assessed. Mr. Bethea objected to the two points assessed in ¶ 70 for a sentence served based on a 2009 conviction, which was included in the original draft. Paragraph 70 remains unchanged in the final PSR.

Mr. Bethea objected to the two criminal history points assessed in ¶ 70 for the sentence he served after his conviction for escape and resisting arrest on August 5, 2009. *PSR*, pp. 36-37 (Objection No. 6).  Mr. Bethea was 17 years old at the time of the offense, but he was prosecuted as an adult.  He served nine months and was released on May 11, 2010.

Probation's response to Objection No. 6 was that Mr. Bethea was lawfully prosecuted as an adult, and the conviction has not been vacated due to any change in the law.  *Id.*, p. 37.  But the objection was not based on a claim that this was a juvenile offense; it was based on the fact that the offense was committed when he was under the age of 18, and on USSG § 4A1.2(d)(2), which applies to such offenses, regardless of whether they are prosecuted as juvenile or adult crimes.  Under §§4A1.2(d)(2) and 4A1.1(b), two points are added "for each adult or juvenile sentence to confinement for at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense."  This Court must determine whether the record establishes that Mr. Bethea committed the instant offense within five years of his May 11, 2010 release from confinement.

Mr. Bethea pled guilty to three counts of the Third Superseding Indictment.  Two of them - Counts Forty and Forty-One - occurred in 2018.  The other count to which he pled guilty was Count Two, the RICO conspiracy.  He was involved in

three overt acts in that conspiracy, all of which took place in 2017 and 2018, both of which are beyond the five-year lookback period set forth in §4A1.2(d)(2).  The government's statement of facts, to which Mr. Bethea admitted at the Rule 11 hearing, does not identify the date when his participation in the offense commenced. *Transcript, Rule 11 Hearing*, *United States v. Daronde Bethea*, 21-CR-10354-WGY, (Doc. 712), pp. 30-34.  The only dates mentioned are those of the overt acts in 2017 and 2018. There is nothing to indicate the Mr. Bethea joined the criminal enterprise within five years after his May 11, 2010 release from confinement.  Thus, the two points scored in ¶ 70 should not have been applied. Without those two points, he would have a total of eight criminal history points, and he would therefore be in CHC IV, not CHC V.

II.    <u>18 U.S.C. § 3553(a) FACTORS</u>

The statute requires this Court to impose a sentence that is no greater than necessary to accomplish its goals, enumerated in § 3553(a)(2).  These include just punishment, deterrence, reflecting the seriousness of the offense, promoting respect for the law, and the need to avoid unwarranted disparities.  Mr. Bethea respectfully submits that a sentence of 120 months meets these criteria, for the reasons explained below.

A.     <u>History and Characteristics of the Defendant</u>

Mr. Bethea was born to a 16-year old girl, Onilda Dasilva. PSR ¶ 90.  They

lived in West Roxbury when he was young.  By the time he was a teen, his mother

was a single working mom of three.  Daronde was the oldest. PSR, ¶ 90-91.  He

had a brother who was two years younger, and a sister who was twelve years

younger.  His mother was not only working, but also attending school three days a

week.  On those days, she would leave home at 7:30 in the morning and would not

return until 10:00 at night.  There was no adult at home to care for, discipline,

supervise or watch Daronde as he was growing up, and predictably, he got into

trouble. Exhibit 2, p.  When he was in sixth or seventh grade, he went to live with

his father in Providence, Rhode Island.  *Id.* at ¶ 91.  He thrived, participating in

sports and other activities at the Boys & Girls Club.  But he did not have a stable

living situation.  His father moved residences several times.  They left Rhode

Island after his father ended a significant relationship.  At one point they lived in

Dighton, Massachusetts.  They later moved to West Roxbury and later again, to

Roslindale, but after two years he was sent back to live with his mother in

Dorchester.

While in his mother's care, between the ages of 8 and 14 or 15, Mr. Bethea

suffered through three separate incidents of sexual assaults and rape by older

women, one of whom he considered his aunt. *Id.*; Letter from Dr. John Daignault, Exhibit 1, p. 4.

He had other problems in his teens as well, and he was placed in DYS custody. Even as he went down the wrong path and developed a criminal history, Mr. Bethea had some positives in his life. He earned his GED while serving a state sentence. *PSR*, ¶ 102. He also obtained an OSHA certification. He worked at several jobs, including at a commercial cleaning company in Randolph, Home Depot, and Chipotle. *PSR*, ¶¶ 105-107. He also worked during the summers at jobs he found through the Mayor's office in the City of Boston. *PSR*, ¶ 108. In 2014, he met and fell in love with Nelita Monterito, whom he describes as the love of his life. Together they had a boy and a girl, Maddison and Mason Bethea, fraternal twins, who are now seven years old. *PSR*, ¶ 94. Tragically, Nelita died of an overdose on May 7, 2020.

The twins live with their maternal grandmother, and they visit Mr. Bethea's father and his mother on weekends. They also communicate with Mr. Bethea virtually on a regular basis, and both of his parents report that the twins feel very close to him. Mr. Bethea's father says that the twins talk about him as if he is still with them. His mother says that Mason in particular worries about what will happen to them if their father serves a long prison sentence, as he is the only parent they have now. Exhibit 1, pp. 5, 6; Exhibit 3.

5

While the twins' loss of their mother and their yearning for their father does not meet the criteria for a downward departure for extraordinary family circumstances under USSG § 5H1.6, their situation and their need for the opportunity to have a meaningful relationship with their father is compelling. In ten years, they will be on the brink of young adulthood, but still young enough to need and receive some guidance from their father. In twenty years, that window will likely have closed. This Court can and should consider Mr. Bethea's family circumstances in crafting a sentence in this case.

Mr. Bethea is facing a lengthy sentence regardless of what this Court decides. He desperately wants to be there for his children, to help teach them the lessons he learned, painfully, from his own mistakes and bad conduct.

B.   <u>Nature and Circumstances of the Offense</u>

Mr. Bethea's offense conduct consisted of his participation in two armed robberies and an attempted murder, all between November, 2017 and July, 2018. The Third Superseding Indictment, obtained on May 18, 2023, charged him in Count Two with a RICO conspiracy, including three overt acts); in Count Forty with a Hobbs Act conspiracy, an armed robbery in Canton; and in Count Forty-One with felon in possession of a firearm, also based on the armed robbery in Canton. After his arrest in the July, 2018 robbery, Mr. Bethea stopped associating

with the Cameron Street gang. *PSR, ¶ 93.* Approximately two years later, the

mother of his twins died as a result of an overdose of a synthetic drug.

November 8, 2017 Hobbs Act robbery
(Count Two, overt act (c))

Mr. Bethea was involved in the robbery of a home in Boston with co-

defendant Clayton Rodrigues on November 8, 2017.  When police responded to the

scene, Mr. Bethea was climbing out a window onto the roof of the home, but was

not armed.  Mr. Rodrigues fled and a revolver was found in his flight path.  Inside

the home, they found a firearm inside one of the second-floor bedrooms and 21

heat-sealed bags of marijuana, a scale and a heat sealer.

June 11, 2018 Attempted Murder
(Count Two, overt act (z)

The most serious offense in this case is the attempted murder that occurred

close to 11:00 p.m. on June 11, 2018 in Dorchester.  The victim, a member of the

Wendover NOB gang, was in a car in front of 679 Columbia Road.  The Wendover

Street and Cameron Street have been rivals for years.  A group of Wendover NOB

members was prosecuted in this Court in *United States v. Joshua Teixeira, et al*,

No. 20-10197-LTS, which charged a RICO conspiracy as well as offenses

involving drugs and violence, including multiple murders and attempted murders.

The activities of Wendover NOB are described in Exhibit 7, the Government's

Revised Omnibus Statement of Facts for Sentencing in the aforementioned case.

They are generally the same as those of Cameron Street.  Some of the victims in this case are also defendants in the prosecution of Wendover NOB.

The victim of the June 11 shooting was taken to Boston Medical Center, where he was successfully treated for a collapsed lung and other injuries.  Boston Police executed a search warrant on his vehicle and found a 9mm Smith & Wesson SD9VE in the glove compartment.  *BPD Report* – (Exhibit 1 to be filed under seal).  A complaint was sought against him at Dorchester District Court for unlawful possession of a firearm, unlawful possession of a large capacity feeding device, possession of ammunition, and carrying a loaded firearm.  *Id.*

July 13, 2018 Hobbs Act Robbery in Canton
(Count Two, overt act (aa), Count Forty, and Count Forty-One)

On the night of July 13, 2018, Mr. Bethea participated in the armed robbery of a drug dealer and his girlfriend at their home in Canton with co-defendants Michael Nguyen and Brandon Amado.  Mr. Bethea never entered the house, but he was part of the group and he was in the vehicle with the other defendants when they fled police after the robbery.  He was arrested after being chased and tased by police.  The defendants who entered the house took approximately $2,000 in cash.

C.    Additional § 3553(a) Considerations

Mr. Bethea was not only a perpetrator of violence, but a victim as well.  On July 6, 2018, he was shot outside his mother's house.  A bullet struck the left back

8

side of his head. *Id.*, ¶ 97.  He was shot again while pumping gas at a gas station in Boston on February 11, 2021, suffering a fracture to his right elbow.  Still today, he does not have full function of his right elbow as a result of that shooting. *Id.*

The fact that Mr. Bethea stopped associating with the Cameron Street gang in 2018 is something that this Court can and should consider in determining his sentence.  The Guidelines in no way account for it, and yet it reflects Mr. Bethea's decision to move his life in a different direction, largely motivated by his relationship with his young twins. Exhibit 1. *Opinion letter of Dr. John Daignault*, p. 6.  It also means that while his role in the offense does not entitle him to any Guidelines adjustments, his involvement was short lived compared with many if not most of the other twenty-one defendants in this case.

His less than perfect record after 2018 demonstrates the difficulty of changing one's path after accumulating a criminal history, but his record of working and participating in educational programs at Norfolk County House of Corrections as well as Wyatt shows his determination to make a better life for himself and his children going forward.  Dr. Daignault observed:

> [T]here are certain individuals, especially as they traverse along the age and life experience continuum, who realize that life does not last forever and decide to extricate themselves from the horror and recalculate their remaining existence. Daronde Bethea may indeed be one such person.

Exhibit 1, p. 5, last paragraph.

D.     <u>The Need to Avoid Unwarranted Disparities</u>

The Sentencing Reform Act requires district courts to also consider the need to avoid unwarranted disparities in sentencing. 18 U.S.C. §3553(a)(2)(C)(6).  This means that defendants who are similarly situated, based on the offense of conviction, criminal history, and cooperation or the lack thereof, should receive similar sentences.  *United States v. Martin*, 520 F.3d 87 (1st 2008).  This section of the Sentencing Reform Act seeks to promote both uniformity in sentencing nationwide and to promote proportionality in the sentences imposed upon co-defendants in the same case.  The latter is based on both §3553(a)(2) and § 3553(a)(6), because respect for the law diminishes when natural principles of justice, such as proportionality, are ignored. *Martin*, at 94, *citing*, *Gall v. United States*, 128 S.Ct. at 599.

Two sources of information are relevant to this Court's consideration of the need to avoid unwarranted disparities in this case: (1) the JSIN data for other comparable federal defendants; and (2) the sentences imposed on members of the Wendover Street NOB gang in *United States v. Joshua Teixeira*, 20-CR-10197-LTS.  A third source may be the sentences imposed or to be imposed on co-defendants in this case.  To date, there is very limited information in this third category.

1.    <u>JSIN Data</u>

The JSIN data provides helpful information regarding sentences imposed over the past five years on defendants who are comparable to Mr. Bethea in multiple ways: they had the same final offense level (34); the same criminal history category; and the same primary Guideline (§2A2.1).  Excluding defendants who received credit for substantial assistance, the average sentence for these defendants in CHC V was 137 months, and the median sentence was 120 months. *PSR*, ¶ 129. With the same exclusion, the average sentence imposed on these defendants in CHC IVwas 157 months, and the median sentence was 120 months.[2]  The government's recommendation for a 250 month sentence is more than double the median sentence in both categories.

2.    <u>Sentences imposed in *United States v. Joshua Teixeira, et al.*</u>
Crim. No. 20-10197-LTS

Also relevant for this Court's consideration are the sentences imposed in the prosecution of Wendover NOB in *United States v. Joshua Teixeira*, 20-CR-10197-LTS.  The defendants in that case were also prosecuted for a RICO conspiracy, and the overt acts charged and pled to in that conspiracy included murder and

---

[2] These figures are taken from the first draft of the PSR, ¶ 128.

attempted murder, based on the very same inter-gang conflict that is the subject of this case: the rivalry between the Wendover NOB and Cameron Street gangs. The longest sentence imposed in that case was 180 months.

Wilson Goncalves-Mendes. With a TOL of 36 and in CHC II, the GSR was 210-262 months. *Sentencing Transcript*, 20-CR-10197-LTS, Doc. 710, p. 40.[3] The overt acts charge against Goncalves-Mendes in the RICO conspiracy count included attempted murders and also drug dealing (fentanyl). The government's position was that he was responsible for shootings. The sentencing court found that the government had met its burden on two of the three shootings, but not the third. *Id.*, p. 5, 14, 38, 39. It also found that while on pretrial release, the defendant had sold fentanyl and had kept a gun at his house. *Id.*, p. 60-63. The government recommended a 168 month sentence, and the court imposed a sentence of 144 months. *Id.,* p. 41.

Ricky Pina. The court found that Pina was the targeter for a gang-related planned execution in which two masked individuals in hoodies walked into a barbershop at 10:46 a.m. and shot the victim dead as he sat in a chair. *Sentencing Transcript*, Doc. 746, pp. 61-64. Mr. Pina's TOL was 40 and he was in Criminal History Category II. *Id.*, pp. 8, 70. His GSR would have been 360-life, but he pled

---

[3] Citations to pleadings in these sentencing summaries are all to docket entries on in *United States v. Teixeira, et al*, 20-CR-10197-LTS.

only to the RICO conspiracy count, for which the statutory maximum is 20 years. Thus, his GSR was effectively 240 months. *Id.*, p. 70. The government recommended 192 months, and the court sentenced him to 180 months. *Id.*, p. 94

Darius Bass. The government described Bass as "a significant violent member of the NOB gang," and told the sentencing court that he was "near the top" of the group of nine defendants. *Sentencing Transcript*, Doc. 720, p. 19:1-7. The sentencing court found him responsible for two shootings (attempted murders). With a TOL of 32 and in CHC II, resulting in a GSR of 135 to 168 months, and a government recommendation of 154 months, he was sentenced to 144 months. *Id.*

Joshua Teixeira. described by prosecutors as "an active and central member of the NOB gang," was sentenced based on, among other things, an attempted murder on May 17, 2018. *Government Sentencing Memorandum*, Doc. 551, pp. 1, 3. Teixeira and two others pulled up near a group of people in Cameron Street territory in Dorchester at 9:00 p.m., where Teixeira fired at least six shots from a 9 mm handgun at the group. Multiple shots were exchanged by three different shooters. With a TOL of 30 an in CHC I, Mr. Teixeira's GSR was 97-120 months. The government recommended 97 months, and the court imposed a sentence of 84 months. *Sentencing Transcript*, Doc. 618, pp. 10, 42-43.

CONCLUSION

Mr. Bethea respectfully requests this Court to consider Mr. Bethea's personal history; supportive family relationships; his role in the lives of his children; the fact that he stopped associating with the gang six years ago; and the sentences imposed in comparable cases, and impose a sentence of 120 months. A ten-year sentence reflects the seriousness of this offense.  It is enough to meet the goals of general and specific deterrence, and it is enough to punish Mr. Bethea for the crimes he committed and acknowledged.

WHEREFORE, the defendant, respectfully requests this Honorable Court to sentence him to 120 months.

Respectfully submitted,

DARONDE BETHEA
By his Attorney,


/s/Leslie Feldman-Rumpler
Leslie Feldman-Rumpler
Attorney-at-Law
BBO # 555792
4 Cypress Street, Suite 7
Brookline, MA  02445
(617) 728-9944
Leslie@feldmanrumplerlaw.com

14

<u>CERTIFICATE OF SERVICE</u>

I, Leslie Feldman-Rumpler, hereby certify that I have served a copy of the within motion on all parties by causing it to be filed electronically via ecf.

  6/12/2024                      /s/Leslie Feldman-Rumpler  
Date                                    Leslie Feldman-Rumpler, Esq.

15