UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 21-10354-WGY(sss) |
| ) | |
| 20.  DARONDE BETHEA, ) | |
|        a/k/a "Freeze," ) | |
|        Defendant ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

On February 12, 2024, DARONDE BETHEA, also known as "Freeze," pleaded guilty to Counts Two, Forty, and Forty-One of the above-captioned third superseding indictment charging him with conspiracy to participate in Cameron Street, a violent racketeering enterprise, in violation of 18 U.S.C. § 1962(d), conspiracy to interfere with commerce by threats or violence, in violation of 18 U.S.C. § 1951, and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). BETHEA pleaded guilty pursuant to a plea agreement tendered under Rule 11(c)(1)(B) where he admitted that in connection with his participation in the racketeering enterprise, he committed an attempted murder with life-threatening injuries (ECF No. 647).

In the final version of the Pre-Sentence Report dated June 10, 2024 ("PSR"), the United States Probation Office found BETHEA's total offense level ("TOL") after acceptance of responsibility was 34. PSR, ¶ 65. With a criminal history category ("CHC") of V, Probation concluded that BETHEA's guideline sentencing range ("GSR") was 235-293 months in prison. PSR, ¶¶ 76, 113.

The government respectfully requests that this Court sentence BETHEA to 250 months in prison, a sentence within the applicable guideline range, and three years of supervised release. To further the Cameron Street enterprise, BETHEA attempted to assassinate a gang rival; discussed murdering the witness who identified him as the shooter; and along with other members of

Cameron Street committed two brazen home invasion robberies armed with firearms. BETHEA deserves every day of the government's recommended sentence.

The Cameron Street Enterprise. For decades, Boston and surrounding communities have been wracked by murders and other acts of violence committed by and against youths whose families had historical ties to Cape Verde, an island nation off the coast of Portugal. Over time, different designations have been used to identify different factions but the adversaries have always maintained a roughly consistent geographic area of concentration. One faction is primarily based in Dorchester, in the vicinity of Bowdoin Street, Geneva Avenue, Cameron Street, and Hancock Street. The other faction is based near Uphams Corner on the Dorchester – Roxbury neighborhood line, primarily centered in and around Wendover Street, separated from their Dorchester rivals by Columbia Road, a major Boston thoroughfare.

During a two-year investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Drug Enforcement Administration ("DEA"), agents identified DYETTE as a member of Cameron Street, a criminal enterprise that used violence, threats of violence, and intimidation to preserve, protect, and expand its territory and enhance its prestige, reputation, and position in the community. Agents obtained information about the gang from cooperating witnesses who were themselves associated with Cameron Street. Through the use of consensual recordings, Title III interceptions, search warrants, and evidence seized by state and local law enforcement, agents determined that Cameron Street members possessed, carried, and used firearms to commit murder and assault rivals, especially their chief rival, another Boston gang known as NOB (for Norton, Onley, and Barry Streets, sometimes referred to as Wendover). Agents learned that Cameron Street members distributed controlled substances, committed armed robberies and home invasions, and engaged in human trafficking to generate income for the

enterprise. PSR, ¶¶ 17-20.  Several cooperating witnesses who were themselves associated with Cameron Street identified BETHEA as a member of the gang. During the investigation, agents developed evidence proving that BETHEA personally committed at least three acts to further the Cameron Street enterprise. PSR, ¶ 21.

CENTEIO / BETHEA 2018 Attempted Murder of NOB/ Wendover Gang Member. Before a United States grand jury, CW-3, a member of Cameron Street, testified that at some point in 2018 he was with Cameron Street leader ANTHONY CENTIEO, a/k/a "Wheezy," when CENTEIO received a telephone call. CENTEIO told CW-3 to take a ride with him. When they parked, CENTEIO told CW-3 that "he was about to witness a murder." A short time later, CW-3 saw an NOB/Wendover gang member (identified as Victim No. 11 in the third superseding indictment) walk towards a car.  CW-3 then saw BETHEA come out between two houses and start shooting. When CW-3 asked CENTEIO who BETHEA shot, CENTEIO told CW-3 the correct first name of Victim No. 11. Based on the information provided by CW-3, including the first name of Victim No. 11, agents located a June 11, 2018 Boston Police incident report describing a shots-fired call to 679 Columbia Road in Dorchester where Victim No. 11 had been rushed to Boston Medical Center for treatment for several gunshot wounds and a collapsed lung:



3

CW-3 also testified that several days after the shooting, while hanging out with other Cameron Street members on Howe Street, CENTEIO told CW-3, "Freeze (BETHEA) really don't miss" and "he didn't miss a shot" when targeting the victim. PSR, ¶¶ 22-24.

<u>BETHEA Discussed Murdering CW-3</u>. The third superseding indictment, returned on May 18, 2023, added the June 11, 2018 CENTEIO / BETHEA attempted murder to the list of overt acts committed by Cameron Street members to further the enterprise (Count Two, ¶ 10(z)). After the indictment was returned, agents interviewed CW-5 pursuant to a standard proffer letter. CW-5 was not a member of Cameron Street but believed that several firearms CW-5 sold were later seized by agents from Cameron Street members. CW-5 was held in pre-trial custody with BETHEA. When the third superseding indictment was returned, BETHEA told CW-5 that he had committed the June 11, 2018 shooting (BETHEA exact words to CW-5 were "That one's mine"). BETHEA then told CW-5 that he knew who was cooperating because there were only three Cameron Street members present for the shooting and two of them (CENTEIO and BETHEA) were charged. BETHEA referred to the cooperating witness by a Cameron Street gang name. The name BETHEA gave to CW-5 and that CW-5 provided to agents was the creole version of CW-3's Cameron Street gang name. CW-5 did not know the true name or identity of CW-3.

CW-5 advised agents that BETHEA regularly discussed the need to murder CW-3. BETHEA told CW-5 that CENTEIO had authorized a contract to kill CW-3, that CENTIEO's girlfriend would pay $10,000 to the person who murdered CW-3, and that an individual who wished to be a full member of Cameron Street had accepted the contract ("shooter"). Agents directed CW-5 to record a conversation with BETHEA about the murder plot. During a brief conversation, BETHEA discussed another inmate scheduled to smuggle drugs into the facility, then directed CW-5 to make contact with the shooter:

4

| | |
|---|---|
| CW-5: | You want me to tell that nigga [shooter] anything else? |
| BETHEA: | Nah |
| CW-5: | Just tell him to get it done? |
| BETHEA: | Stay safe out there. |
| CW-5: | [laughed] You know the little bitch gonna get bloody! |
| BETHEA: | Tell him, nah, never mind, I don't even want to send the message through you. |
| CW-5: | What! Say it! |
| BETHEA: | Be like yeah, see what's up, he knows, you know? You know? All of us in a tight spot. |
| CW-5: | All of us in a tight spot, I got you baby. |
| BETHEA: | We all got one problem. Handle that. |
| CW-5: | We all got one problem. Handle that. I got you. |

PSR, ¶¶ 25-26.

BETHEA's 2017 Home Invasion. On November 8, 2017, BETHEA committed a home invasion robbery of individuals identified as Victims 3 and 4 in the third superseding indictment with fellow Cameron Street member (12) CLAYTON RODRIGUES and a third man. When Boston Police officers responded to a 911 call for a robbery in progress at 5 Lorenzo Street in Dorchester, they found BETHEA wearing a hooded sweatshirt and white latex gloves climbing out a window and onto the roof of the home. When apprehended, BETHEA told the officers, "it's just a B&E." RODRIGUES was arrested a short distance away from the robbery. BETHEA had a key fob for a Mercedes SUV parked near the scene of the robbery. Two latent prints recovered from the interior of the Mercedes were identified as RODRIGUES's. Location data from phones recovered from RODRIGUES's person and a phone found in BETHEA's SUV showed that

BETHEA and RODRIGUES were together leading up to the robbery and were in the vicinity of 5 Lorenzo Street at the time of the home invasion. After securing and searching the home, officers located a Glock 19 firearm loaded with one round in the chamber and 14 rounds in the magazine inside one of the second-floor bedrooms and a black revolver in a neighboring backyard along RODRIGUES's flight path.  Officers also recovered 19 pounds of marijuana in heat sealed bags, a scale, and a heat sealer from the home (Count Two, ¶ 10(c)).  BETHEA was initially scheduled to go to trial on this case in Suffolk Superior Court but defaulted on his trial date. Agents spent months tracking him until he was apprehended and charged in this case. PSR, ¶ 27.

BETHEA's 2018 Home Invasion. On July 13, 2018, BETHEA, along with co-defendants (18) MICHAEL NGUYEN, a/k/a "Asian," and (22) BRENDON AMADO, committed a home invasion robbery with firearms of Victim No. 12—a drug dealer—and Victim No. 13—the girlfriend of Victim No. 12—at 147 Rockland Street in Canton. The robbers, wearing masks and dark hoodies and carrying firearms, broke into the home through the back door. Victim No. 12 ran out of the front door of the house and called 911; Victim No. 13 remained in the house. Victim No. 13 was brought into the living room, punched in the head, had a gun put to her head, and had a pillow put in front of her face as men ransacked the house and demanded to know "where's the stuff, where's the money, where's your boyfriend?" After the robbers stole $2,000 in cash, they fled in a silver Ford F-150 pick-up truck. Canton Police officers responded to the 911 call, and pursued the men in the truck until it abruptly stopped in Stoughton where the cruiser collided with the truck. BETHEA ran from the truck. An image from the police cruiser dashboard camera captured BETHEA running from the truck with a firearm in his hand:



From BETHEA's flight path, officers recovered a Smith and Wesson M&P 9 millimeter pistol and 15 rounds of ammunition. (Count Two, ¶ 10(aa); Count Forty and Forty-One). PSR, ¶¶ 28-29.

BETHEA's Criminal History and Probation's Guideline Range. BETHEA's earliest scorable criminal history event ties him to Cameron Street. As officers approached a crowd in Cameron Street territory, BETHEA bolted into a yard with a "no trespassing" sign. When officers arrested him, BETHEA was found to have outstanding warrants issued from the Department of Youth Services (see PSR, ¶¶ 68-69). As officers escorted him out of the no trespassing zone, BETHEA broke free and ran before being apprehended again. As a result of a probation violation, BETHEA eventually served nine months in prison for resisting arrest. PSR, ¶ 70.

In addition to the armed home invasion cases that were eventually incorporated into the Cameron Street indictment, BETHEA was convicted of three additional firearm related offenses, including a three year state prison sentence for unlawful possession of a firearm and possession of a high capacity feeding device, a nine month house of correction prison sentence for carrying a dangerous weapon, and a 30 day prison sentence for unlawful possession of ammunition. See PSR, ¶¶ 71-73. Even a seemingly non-violent conviction connects BETHEA to mayhem: officers responded to a ShotSpotter alert and calls for two cars exchanging gunfire with each other, found BETHEA and another Cameron Street member in proximity to one of the cars with bullet holes,

7

and recovered a bag of oxycodone from the car. BETHEA received a 122 day sentence for possession of oxycodone. PSR, ¶ 74. This produced a criminal history category of V. PSR, ¶ 76.

BEHTEA's commission of an attempted murder with life threatening injuries, with acceptance, received a total offense level of 34. PSR, ¶ 44. BETHEA's offense level for the attempted murder was so high that his two home invasion robberies with firearms – crimes that this Court has previously said were spectacularly violent – did not increase his offense level under the guidelines. PSR, ¶¶ 45-57.

Argument. BETHEA's attempted murder of a gang rival is among the most serious conduct catalogued in this investigation. There are only two reasons why BETHEA is not facing murder charges – random chance and the close proximity of the victim to excellent medical care. While the attempted murder is the most serious act of violence BETHEA was known to have committed, it is hardly the only one he committed. BETHEA was arrested in the middle of committing a home invasion in Dorchester (on the roof of the home, no less). BETHEA was released on bail, committed the attempted murder described above, and then committed the 2018 Canton home invasion, where he was caught red-handed, again. BETHEA's possession and use of firearms are a common theme through his criminal history. When the third superseding indictment confronted BETHEA with this evidence, BETHEA discussed the need to murder the witness who identified him as the shooter for the attempted murder. BETHEA committed a series of spectacular acts of violence committed to further the power and prestige of Cameron Street and secure his place in it.

In his sentencing memo, filed on June 14, 2024 (ECF No. 780), BETHEA claims he has changed for the better, though in a moment of candor he acknowledged that his criminal record would make it difficult for anyone, including this Court, to detect this change. (The government would add that openly discussing murdering a witness, an event that occurred last year, further

8

complicates BETHEA's narrative of personal growth.) BETHEA then spent the bulk of his memo pointing at sentences imposed on Cameron Street rivals in a separate indictment, some of which, while serious, were lower than the government's recommendation here. It is enough to say that the goal of 18 U.S.C. § 3553(a) is to fashion an appropriate sentence for each defendant as an individual. Pointing to sentences imposed in a separate case without reference to a defendant's age or criminal history or the quantum or strength of the evidence offers no useful guidance on what kind of sentence to impose in this case. In this investigation, the government developed eyewitness evidence that with other leaders and members of Cameron Street, BETHEA nearly killed a gang rival and committed two home invasions armed with firearms, all with a criminal history that earned him a place in CHC V.

Conclusion. The government's 250 month recommendation serves the goals of 18 U.S.C. § 3553(a). The recommended sentence achieves general deterrence, in that it effectively communicates the real-world consequences of joining criminal conspiracies like Cameron Street. It serves to specifically deter BETHEA, something that many other judges have failed to accomplish before now. More importantly, a 250 month sentence promotes respect for the law and serves to protect the public from BETHEA.

For these reasons, the government respectfully requests that this Court sentence DARONDE BETHEA to a total of 250 months in prison and three years of supervised release.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   /s/ Christopher Pohl
      Christopher Pohl
      Charles Dell'Anno
      Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 13, 2024.

                                /s/ Christopher Pohl
                                Christopher Pohl
                                Assistant U.S. Attorney